[No. 13788.  Department One.  April 13, 1917.]

WASHINGTON SHOE MANUFACTURING COMPANY, *Respondent*,

v. DODWELL DOCK & WAREHOUSE COMPANY,

INCORPORATED, *Appellant*.[1]

WAREHOUSEMEN—LOSS OF GOODS BY FIRE—LIABILITY—CONTRACT—
CONSTRUCTION.  Where a warehouseman, receiving a deposit of goods,
issued a receipt, using a blank railroad bill of lading, printed mat-
ter in small type on the back of the bill of lading, intended for the
purpose of changing the liability of the carrier of goods to that of
a warehouseman forty-eight hours after the goods reach their desti-
nation and notice of arrival, is so foreign to, and inconsistent with,
the relationship of warehouseman and depositor as to completely
negative the claim that it was assented to for the purpose of consti-
tuting a special contract whereby the warehouseman was to assume
the extraordinary liabilities of an insurer of the goods against fire.

Appeal from a judgment of the superior court for King
county, Mackintosh, J., entered April 8, 1916, upon the ver-
dict of a jury rendered in favor of the plaintiff, in an action
for breach of contract, after a trial on the merits.  Reversed.

*Huffer & Hayden*, for appellant.

*Clise & Poe*, for respondent.

WEBSTER, J.—This is an action to recover the reasonable
value of merchandise destroyed by fire in the burning of ap-
pellant's warehouse in the city of Seattle.  Respondent was
engaged in manufacturing and selling shoes in the domestic
and foreign markets.  Appellant was engaged in the business
of operating a warehouse and dock on the Seattle water
front.  It was in no sense a common carrier and had never
engaged in that business.  When goods intended for ship-
ment were delivered at its warehouse, appellant would issue
to the owner receipt for same.  When they were subsequently
placed on board vessel, the mate would issue a similar receipt.
Upon the surrender of these receipts to the steamship com-

[1]Reported in 164 Pac. 252.

pany, its agent would deliver a bill of lading in regular form to the shipper.

Respondent had shipped merchandise through appellant's warehouse on previous occasions and was thoroughly familiar with the customary method of issuing receipts and bills of lading. On October 28, 1915, it delivered at the warehouse a number of cases of shoes to be thereafter placed on board ship for transportation to the Philippine Islands. Respondent had on hand a supply of blank railroad bills of landing, and it was its custom to use these forms when shipping merchandise either by rail or water, whether the goods were to be delivered directly to the carrier or to an independent warehouseman or wharfinger. Upon the occasion in question, the shoes were listed on these forms, which were delivered to respondent's drayman, who hauled the goods to the warehouse. The lists were presented to appellant's checker at the dock who, after comparing the marks on the merchandise with the description of the goods on the bills of lading, signed the same and returned them to the drayman. Within the following twenty-four hours, the warehouse and its contents, including the shoes, were destroyed by fire.

On the back of the bills of lading, are printed, in small type, the ten conditions comprising the standard form of bill of lading approved by the interstate commerce commission, all of which have reference to the relative rights and obligations of carrier and shipper. Among these provisions, is the following:

"The carrier or party in possession of any of the property herein described shall be liable for any loss thereof or damage thereto except as hereinafter provided. No carrier or party in possession of any of the property herein described shall be liable for any loss thereof or damage thereto or delay caused by the act of God, the public enemy, quarantine, the authority of law, or the act or default of the shipper or owner or for differences in the weights of grain, seed, or other commodities caused by natural shrinkage or discrepancies in elevator weights. For a loss, damage, or delay caused by fire occur-

ring after forty-eight hours [exclusive of legal holidays] after notice of the arrival of the property at destination or at port of export [if intended for export] has been duly sent or given, the carrier's liability shall be that of warehouseman only. Except in case of negligence of the carrier or party in possession, (and the burden to prove freedom from such negligence shall be on the carrier or party in possession), the carrier or party in possession shall not be liable for loss, damage, or delay occurring while the property is stopped and held in transit upon the request of the shipper, owner or party entitled to make such request or resulting from a defect or vice in the property or from riots or strikes. When in accordance with general custom on account of the nature of the property, or when at the request of the shipper, the property is transported in open cars, the carrier or party in possession [except in case of loss or damage by fire, in which case the liability shall be the same as though the property had been carried in closed cars] shall be liable only for negligence, and the burden to prove freedom from such negligence shall be on the carrier or party in possession."

Respondent did not allege that the destruction of the goods was due to appellant's negligence, but based its right of action upon breach of contract, claiming that, by virtue of the printed matter on the reverse side of the forms heretofore quoted, appellant became an insurer of the property. The relationship existing between appellant and respondent was that of warehouseman and depositor and, in the absence of special contract, appellant's liability was that of an ordinary bailee for mutual benefit. The printed matter on the bills of lading is applicable only to the relationship of carrier and shipper, and the provisions upon which appellant relies were clearly intended for the purpose of changing and limiting the liability of the carrier to that of a warehouseman forty-eight hours after goods had reached their destination and notice of their arrival had been duly given. They are wholly foreign to and inconsistent with the relationship of warehouseman and depositor. A mere reading of the conditions clearly demonstrates this fact. An examination of the record

leads irresistibly to the conclusion that the papers signed by appellant's checker were understood and intended by the parties to be nothing more than a receipt, evidencing the fact that the merchandise described upon the face of the forms had been deposited in appellant's warehouse. There is no substantial evidence in the record tending to prove that the minds of the parties met upon the provisions quoted as the terms of a special contract imposing upon appellant the extraordinary liability of an insurer of the goods against fire.

But detailed discussion of the evidence would serve no useful purpose. The provisions relied upon by respondent as evidencing the terms of the agreement are so inapplicable and inappropriate to the relationship actually existing between the parties as to completely negative the thought that they were assented to for the purpose claimed by respondent. To attempt to conjure them into an agreement whereby appellant became an insurer of the merchandise would be to make a contract for the parties which they neither made nor undertook to make for themselves.

The judgment is reversed, with directions to dismiss the action.

ELLIS, C. J., CHADWICK, and MAIN, JJ., concur.